THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUBY SERVICE, Defendant-Appellant.

First District (1st Division)   No. 63074

Opinion filed April 25, 1977.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendant, Ruby Service, was charged by complaint with the offense of aggravated assault in violation of section 12—2(a)(1) of the Criminal Code (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)). After a bench trial, the trial court found defendant guilty as charged, sentenced her to one year probation, and ordered her to pay a $250 fine. From this judgment of conviction, defendant now appeals.

On appeal the defendant contends that the State failed to prove the offense charged beyond a reasonable doubt for two reasons: (1) there was no direct evidence that the defendant actually placed the complainant in apprehension of receiving a battery, and (2) the complainant's actions actually provoked the defendant into acting to protect her home and its occupants.

We reverse.

At trial, the only witness called by the State was Officer Winestead. Officer Winestead testified that on October 2, 1975, pursuant to a police communication concerning a disturbance involving a yellow cab, he and his partner arrived at 6425 South Ashland Avenue and encountered Emil Nicolette, the driver of a cab parked in front of that address. The two officers, accompanied by Mr. Nicolette, approached the building and were admitted by a 12-year-old boy who led them up to a second floor apartment. The occupants of that apartment invited the police officers inside. Officer Winestead entered the kitchen and encountered the defendant, her sister, and another adult. A conversation then ensued during which Officer Winestead told the occupants of the apartment that Mr. Nicolette had said they owed him money. The defendant's sister denied this. Although present for the major part of the conversation, the defendant said nothing.

Officer Winestead went on to testify that he, his partner, Mr. Nicolette and the defendant's sister then went into the dining room and continued this conversation. During the conversation in the dining room, Officer

Winestead was paying no attention to the defendant. About 3 or 4 minutes later, Officer Winestead heard Mr. Nicolette yell, "She's got a gun," and saw him jump back against the wall. Officer Winestead turned around and saw the defendant standing at the far wall of the front room about 15 or 20 feet from Mr. Nicolette with a pump shotgun in her hands. The barrel was pointed toward the wall against which Mr. Nicolette was standing and a small child was holding the end of the barrel and yelling, "Auntie, put it down." Officer Winestead and his partner then ran into the room, grabbed the gun, and arrested the defendant. Examination of the gun indicated that it was not loaded.

Testifying in her own behalf, the defendant stated that on the night of the occurrence, Mr. Nicolette, whom she had never seen before, was in her apartment. According to the defendant, Mr. Nicolette "had no business being that far up in the apartment," and she told him to leave. Mr. Nicolette then started to follow the defendant. The defendant then entered her front bedroom and Mr. Nicolette continued following her toward the bedroom. The defendant picked up an unloaded shotgun in the bedroom and entered the living room. Mr. Nicolette was entering the bedroom, but seeing the shotgun, backed into a corner of the living room and shouted, "She's going to shoot me." The defendant testified that she did not know whether or not she pointed the gun at Mr. Nicolette. Upon entering the living room with the shotgun, the defendant noticed a number of police officers who were standing in the dining room. Although she had run through the dining room on her way to the bedroom just seconds before, the defendant stated that she saw no police officers there until she brought the shotgun from the bedroom. The defendant recalled that she did not know what to do then, and her 14-year-old son ran into her and knocked her down. She dropped the gun and lay on the floor until the police picked her up.

The complaining witness, Emil Nicolette was not in court the day of trial and did not testify.

In this appeal the defendant contends that she was not proved guilty beyond a reasonable doubt of the offense charged. Defendant further contends that her testimony raised the affirmative defenses of defense of person and dwelling which were not overcome by the State.

■■ It is our opinion, based upon the record before us, that the State did not overcome beyond a reasonable doubt the defendant's affirmative defense, defense of person and that therefore the judgment of the trial court must be reversed.

■■ Where the defendant raises an affirmative defense by offering some evidence thereon, the burden is then on the State to prove the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. (*People v. Williams* (1975), 28 Ill.

App. 3d 67, 328 N.E.2d 192; Ill. Rev. Stat. 1975, ch. 38, par. 3—2(b).) In the instant case the defendant's testimony was sufficient to raise the defense of self-defense. Defendant testified that on the night of the occurrence she saw Mr. Nicolette, a man whom she had never seen before, in her apartment. Since he had no business being there she told him to leave. Mr. Nicolette then started chasing her, she went to the bedroom, and picked up a shotgun which she knew to be unloaded. She went to the living room and there encountered Mr. Nicolette who was about to enter the bedroom. The only witness offered by the State to rebut this testimony was Officer Winestead who testified that the defendant was present for only a part of the conversation in the kitchen and was not present at all during the conversation in the middle room. In fact, after the defendant left the kitchen, Officer Winestead next saw her when he heard Mr. Nicolette yell, "She's got a gun." There was a period of at least 3 or 4 minutes during which Officer Winestead was not paying any attention to the defendant, but instead was talking to the defendant's sister. Furthermore, Officer Winestead never testified to any of Mr. Nicolette's actions during this 3 or 4 minute period and never contradicted the defendant's testimony that Mr. Nicolette was chasing her or following her into the bedroom.

■■ Under the circumstances of this case, where the complaining witness was not in court and did not testify, where the defendant encounters a strange man in her apartment, and where the only witness to testify for the prosecution did not specifically contradict the defendant's testimony, nor did that witness offer any testimony as to what happened for a significant 3- or 4-minute span, we find that there is a reasonable doubt concerning the defendant's affirmative defense of self-defense.

For that reason, we reverse the judgment of the circuit court of Cook County.

Judgment reversed.

GOLDBERG, P. J., and BUA, J., concur.